UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CONSTELLATION NEWENERGY, INC.,

    Plaintiff,

v.

    Case No.: 2:15–CV–2880
    JUDGE SMITH
    Magistrate Judge Kemp

CARBORUNDUM GRINDING WHEEL
COMPANY,

    Defendant.

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Constellation NewEnergy, Inc.'s Motion for Summary Judgment (Doc. 30). Defendant opposed the Motion (Doc. 35) and Plaintiff did not reply in support. The Motion is now ripe for review. For the following reasons, Plaintiff's Motion is **DENIED**.

### I.    BACKGROUND

This action revolves around an electricity supply agreement (the "Agreement") between Plaintiff Constellation NewEnergy, Inc. ("Constellation") and Defendant Carborundum Grinding Wheel Company ("Carborundum") and the parties' alleged rights and obligations stemming therefrom.

Constellation, a Delaware corporation located in Maryland, and Carborundum, an Ohio corporation, entered into a contract (the "Agreement") on or about July 16, 2012. (Doc. 30-4, Agreement at 4). The Agreement set forth the terms of Constellation's provision of electricity to Carborundum as well as the installation of energy efficient equipment on Carborundum's

property.  (*Id.* at 2).  As per the Agreement, Constellation subcontracted ESCO to complete the installation of the equipment.  ESCO completed the installation on December 6, 2012.  (Doc. 30-5, Certificate of Equipment Installation Completion and Acceptance ("Completion Certificate")).  Constellation approved the installation on January 3, 2013, certifying that the installation was "fully complete, operational, and acceptable for the purposes of the Agreement . . . ."  (*Id.*).  Carborundum, through Misty Armstrong, signed a Completion Certificate on April 2, 2013, certifying that the equipment installation was "fully complete, satisfactory and acceptable for all purposes of the Agreement, in accordance with the Agreement's support documents . . . ."  (*Id.*).

However, the installation apparently did not go as well as Carborundum originally believed.  Over time, Carborundum became aware that lighting was poor in certain parts of the facility, that some lights were still drawing power that were supposed to be removed, that certain wires were either improperly run or left exposed, and that numerous other issues existed with the installation.  (Doc. 35-1, Marchetti Aff. at ¶ 3).  After finding out about these issues, Carborundum contacted Constellation and advised them of many of the problems with the installation of the equipment.  (*Id.*).  Constellation "provided no cooperation and offered no remedy" for the alleged installation errors.  (*Id.*).  Carborundum has since retained an electrical engineer, Peter Gerardi, who submitted a report on the allegedly improper installation of the equipment.  (*Id.* at ¶ 5, Ex. A).

By September 16, 2014, Constellation determined that Carborundum's accounts were past due and that payment was necessary or Carborundum would be in breach of the Agreement.  (Doc. 30-6, Final Demand at 1).  Carborundum alleges that after ignoring the complaints of poor workmanship, Constellation refused to further work with Carborundum and that Constellation discontinued service.  (Doc. 35-1, Marchetti Aff. at ¶ 4).  Constellation alleges that Carborundum

2

still has not paid the balance owed and thus that Carborundum has breached the Agreement. (Doc. 30-3, Howanski Decl. at 11).

Accordingly, Constellation filed this suit on October 4, 2015, alleging breach of contract, unjust enrichment, and *quantum meruit* claims. Carborundum counterclaimed, alleging that Constellation never fully performed the Agreement and breached the Agreement because Constellation improperly installed some of the equipment and failed to provide notice of the Agreement termination. (*See* Doc. 9, Answer and Countercl. at ¶¶ 3–4). Constellation then filed the instant motion, arguing that summary judgment is appropriate on the claims of both parties. The Court will address each argument below.

## II.    STANDARD OF REVIEW

Plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").  In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

### III. DISCUSSION

Plaintiff argues that summary judgment on both its claims and Carborundum's counterclaims is appropriate because Carborundum breached the Agreement by failing to make payments in a timely manner.  Carborundum argues that Constellation committed the first breach by failing to perform the equipment installation in a good and workmanlike manner as required by Ohio law, noting that Carborundum found a "massive amount of negligence in Plaintiff's workmanship."  (Doc. 35, Mem. Opp. at 4).  Plaintiff did not respond to this argument.

Ohio law relieves a party of liability for its breach of a contract if the other party materially breaches the contract first.  *Toltest, Inc. v. Nelson-Delk*, No. 3:03-CV-7315, 2008 WL 1843991, at *7 (N.D. Ohio Apr. 22, 2008) (quoting *First Energy Sols. v. Gene B. Glick Co.*, 9th Dist. Summit No. 2646, 2007-Ohio-7044, ¶ 35).  "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 2008-Ohio-4413, 897 N.E.2d 184, ¶ 7 (3rd Dist.) (quoting Williston on Contracts, Chapter § 63:3).

Carborundum argues that Constellation breached the Agreement by failing to perform its work in a workmanlike manner. In order to determine who breached first, the Court first examines the Agreement. First, there is no doubt the parties agreed that Constellation, through its contractor, would perform the work in a workmanlike manner. The Agreement states: "Contractor shall perform the installation services in a professional and workmanlike manner, consistent with generally accepted industry practices and in compliance with all applicable laws, and using the services of qualified personnel." (Doc. 30-4, Agreement at 10). Later in the Agreement, it is noted again, "[a]ll work will be conducted in a workmanship-like manner and in accordance with all applicable national, state and local codes and standards." (*Id.* at 13). There is little debate that Carborundum has set forth evidence which, if believed, would show that Constellation likely breached their duty to perform the installation of the equipment in a workmanship-like manner as required by the Agreement. (*See* Doc. 35-2, Girardi Aff. at ¶¶ 4–5). Although Carborundum signed the Completion Certificate, stating the Equipment installation was "fully complete, satisfactory and acceptable for all purposes of the Agreement," at most, the Completion Certificate merely provides a question of fact as to whether Constellation fully performed. (Doc. 30-5, Completion Certificate at 1).[1] Carborundum's conflicting statements go to the weight of its evidence, which the Court does not judge at this stage of the proceedings.

However, the Court's analysis does not end there because the Agreement gave Constellation the right to cure those installation errors. Section 6 of the Energy Efficiency Equipment Exhibit states: "Failure by us or you to properly install the equipment shall not constitute an event of default under the agreement and the customer's sole remedy shall be to

---

[1] Additionally, Plaintiff points to nothing in the Agreement stating that the signature of the Completion Certificate forecloses all complaints about installation errors going forward. If the parties intended for the Completion Certificate to have a binding effect on the future obligations of the parties, such intent is not clear from the text of the Agreement of the Completion Certificate.

require that we and you, at our discretion, properly install the equipment either through Contractor or through a third party at our expense." (*Id.* at 10). Notably, this provision does not give Constellation the option to do nothing when there are installation errors. Rather, it requires that Constellation properly install the equipment in conjunction with Carborundum and the original contractor or a new contractor. Although the Agreement states that improper installation of the equipment is not an event of default, that provision still does not excuse Constellation's alleged breach in this case.

The reason Constellation's breach is not excused is because the Agreement also states that Constellation will be in default of the Agreement if Constellation were to "fail to perform all material obligations under this Agreement and d[id] not cure such default within 5 days written notice from [Carborundum] . . . ." (*Id.* at 5). There is no doubt that Constellation had a material obligation to properly install the Equipment; this was the essence of the contract. Accordingly, once Constellation breached this obligation, Carborundum had to provide notice and a chance to cure. So, although the Agreement states that the improper installation is not an event of default, improper installation is not Constellation's only alleged breach in this case. The actual alleged default or material breach is the combination of the breach of a material obligation, *i.e.* the failure to properly install the equipment, **and** Constellation's decision not to cure the breach. Marchetti attested that he advised Constellation of certain installation issues and that he was "provided no cooperation and offered no remedy." (Doc. 35-1, Marchetti Aff. at 3). Accordingly, Carborundum has provided evidence that, if believed, shows Constellation committed a material breach by improperly installing the equipment and then defaulted under the Agreement when Constellation made no effort to cure that breach as required by the Agreement. Of course, Constellation may still prevent evidence that its performance was adequate at time of

6

Carborundum's later failure to pay as agreed in the Agreement.  The determination of whether Constellation sufficiently performed under the Agreement is central to all of the claims in this case.  Accordingly, Constellation's Motion for Summary Judgment as to all claims at this time is **DENIED**.

### IV.    CONCLUSION

Based on the foregoing, Constellation's Motion for Summary Judgment is **DENIED**.  The Clerk shall **REMOVE** Document 30 from the Court's pending motions list.

Because an extended period of time passed while Carborundum did not have an attorney, the Court **ORDERS** the parties to confer and contact Magistrate Judge Kemp within **fourteen (14) days** of this order to set up a status conference as soon as practicable.  Should the parties need additional discovery that topic may be discussed at the status conference and requested in writing following the conference.  Last, the parties are ordered to arrange a mediation during the upcoming settlement week.

**IT IS SO ORDERED.**

  __/s/ George C. Smith_____  
**GEORGE C. SMITH, JUDGE**  
**UNITED STATES DISTRICT COURT**